# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00386-CR

**Emory Leon Bitterman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 59101, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A Bell County jury convicted appellant Emory Leon Bitterman of sexual assault, a second-degree felony.  *See* Tex. Penal Code Ann. § 22.011(a)(2)(C), (c)(1), (f) (West Supp. 2006). The jury sentenced him to the maximum penalty:  twenty years' imprisonment with a fine of $10,000.  Bitterman seeks reversal of the judgment, arguing that the trial court erred in admitting certain evidence during sentencing, and seeks modification of the judgment, arguing that the trial court did not have the power to order parole conditions.  We will modify the judgment and affirm it as modified.

## BACKGROUND

In late June 2005, the complainant, M.E., who was sixteen years old, enrolled at the American Preparatory Institute at Central Texas College in Killeen in order to earn extra high school credits for early graduation.  His instructor at the institute was Bitterman, who took an interest in

M.E. and attempted to befriend M.E. He obtained M.E.'s phone number from school records and began to call him repeatedly. Two weeks after meeting M.E., Bitterman began engaging in sexual conversations with M.E., including conversations about M.E.'s sexual orientation and whether he had ever watched "gay porn." On July 21, the two went to a local Denny's for lunch. M.E. testified that on the drive back to school, Bitterman touched his leg and asked him to masturbate in his presence, providing M.E. with a roll of paper towels already in the car, and M.E. complied. Exactly one week later, Bitterman took M.E. to his home after class. M.E. testified that Bitterman was going to show him the answers to an upcoming test. Bitterman retrieved and displayed the answers on his computer and then, M.E. testified, displayed homoerotic pornography on his computer to M.E. According to M.E., Bitterman then became aggressively "overly sexual" and proceeded to perform oral sex on M.E. three times. M.E. testified that he and Bitterman engaged in further similar encounters, resulting in Bitterman performing oral sex five more times on M.E., including one time on August 11. Around October 3, Bitterman gave M.E. a compact disc and a floppy diskette of pornography for his upcoming seventeenth birthday. M.E. testified that on this occasion Bitterman again performed oral sex on him.

After the last sexual episode, M.E. testified that he told Bitterman to leave him alone in no uncertain terms. Shortly thereafter, two of Bitterman's other students accused him of attempting to sexually assault them; he was incarcerated for two months awaiting trial. Upon release after receiving deferred adjudication, he resumed contact with M.E. over the phone. Each time, M.E. testified, he told Bitterman to leave him alone. Bitterman, however, visited the grocery store where M.E. worked in Salado in December 2005, bought a single slice of ham, and waited around for M.E.

until M.E. told him to leave. M.E. later called Bitterman and, in an attempt to get Bitterman to finally leave him alone, said that he used drugs—an activity reprehensible to Bitterman—and was going to marry his girlfriend. Bitterman responded that M.E. should run off with him to Canada and marry him instead. M.E. declined.

Around December 18, 2005, M.E.'s mother began receiving phone calls from an individual claiming to be an army recruiter who informed her that M.E. was doing drugs. M.E. learned of the phone calls in January when his mother began checking his breath upon his return home from work. Suspecting that the army recruiter was really Bitterman, M.E. contacted Bitterman by phone and again asked to be left alone. Bitterman denied being the army recruiter but expressed concern for M.E. and informed him that a letter had been sent to his house.

On January 6, 2006, M.E.'s mother found a Christmas card in the mail addressed to M.E. containing a handwritten letter signed by Bitterman. The contents of the letter were of such a nature that she became worried that M.E. had been sexually assaulted. She first contacted the cell phone number listed on the handwritten letter and spoke to Bitterman. At trial, she testified that Bitterman's voice sounded exactly the same as the supposed army recruiter. She then contacted local law enforcement, who interviewed M.E. M.E. was initially very reluctant to mention anything regarding his relationship with Bitterman, but after meeting privately with a police officer, finally related to the officer the details of the August 11 encounter and signed a conforming written statement. Bitterman was then indicted.

Bitterman testified at trial and his story corroborated M.E.'s testimony concerning the dates of the meetings and the non-sexual activities that occurred during those meetings.

Bitterman denied both calling M.E.'s house posing as an army recruiter and performing oral sex on M.E. Bitterman further testified that he did not ask M.E. to masturbate on July 21. Bitterman's version of the July 28 incident differed considerably from M.E.'s. He testified that M.E. asked him to have sex and that he refused because M.E. was under-age. Additionally, Bitterman testified that M.E., after asking to use the Internet, accessed the homoerotic web sites on his own and, after viewing them, asked Bitterman for permission to masturbate in his house. Bitterman testified that he gave permission but left the room so M.E. could have privacy. In Bitterman's version of the early October incident, M.E., after telling Bitterman about his engagement, again asked Bitterman to have sex with him, which Bitterman again refused, though Bitterman did admit to providing the pornographic computer disks. Bitterman also testified to a visit on October 12 in which M.E. came over to his house to browse the Internet for pornography and to masturbate. At this visit, Bitterman claims that he again gave M.E. permission but left the room so M.E. could have privacy.

During the punishment phase of the trial, the State introduced several items of pornography retrieved from Bitterman's home in connection with the investigation. The items introduced contained naked pictures of clearly underage males, including prepubescent boys. The officer who executed the search warrant corroborated that the pictures came from Bitterman's immense pornographic collection.

## DISCUSSION

**Irrelevant/Unfairly Prejudicial Evidence**

We first address Bitterman's arguments concerning the admission of the child pornography photographs during the sentencing phase of the trial. Bitterman argues that the

4

evidence of his possession of child pornography at sentencing was irrelevant and should have been excluded. *See* Tex. R. Evid. 401. Bitterman further argues that even if the evidence were relevant, the unfair prejudice it could cause substantially outweighed its probative value and thus it should have been excluded. *See* Tex. R. Evid. 403. When examining admission-of-evidence issues, we review them for an abuse of the trial court's discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We will uphold the trial court's evidentiary rulings as long as the rulings were "at least within the zone of reasonable disagreement." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Bitterman argues that there was no evidence presented indicating that he ever showed these pieces of pornography to M.E. and cites *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995), as support for the proposition that the evidence was thus irrelevant. Even if we were to assume that Bitterman's reading of *Sonnier* is correct, we can easily distinguish the situation in that case from the present case. In *Sonnier*, the evidence complained of was introduced during the guilt-innocence phase of the trial. *See id.* at 516 (noting that no additional evidence was introduced at sentencing). Here, the evidence complained of—the particular articles of child pornography in Bitterman's possession—was admitted during the sentencing phase of the trial.

During the sentencing phase, both the State and the defendant have the ability to offer evidence "as to any matter the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West 2006). Evidence that the court may deem relevant includes, "notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or

5

for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." *Id.* The possession of child pornography is a crime, and evidence of its commission is thus relevant during sentencing. *See* Tex. Penal Code Ann. § 43.26 (West 2003); *Sanders v. State*, 191 S.W.3d 272, 277 (Tex. App.—Waco 2006, pet. ref'd), *cert. denied*, 127 S. Ct. 1141 (2007). Because extraneous crimes and bad acts are relevant to the issue of the type of punishment that a convicted defendant should receive, the trial court did not abuse its discretion in concluding that evidence demonstrating that Bitterman had committed an uncharged crime was relevant at sentencing.

Bitterman also argues that regardless of the child pornography's relevance, its unfair prejudice substantially outweighed its probative value in violation of Texas Rule of Evidence 403. The court of criminal appeals has held that rule 403 objections must be analyzed using a balancing test:

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The first two components of the test explore the probative value of the evidence. *See id.* at 641. The inherent probative force of the evidence is more than just whether the evidence is relevant; probative force is instead "how strongly it serves to make more or less probable the existence of a fact of consequence to the

6

litigation." *Id.* A proponent's need for a particular piece of evidence is reduced when the proponent "has other compelling or undisputed evidence to establish the proposition or fact." *Id.* (quoting *Montgomery*, 810 S.W.2d at 390).

The third factor of the test evaluates the "unfair prejudice" of the evidence. *See id.* An improper basis for decision is "commonly, though not necessarily, an emotional one." *Id.* (citing *Montgomery*, 810 S.W.2d at 389). This improper emotional basis occurs when the evidence "arouses the jury's hostility or sympathy for one side *without regard to the logical probative force of the evidence.*" *Id.* (citing 1 *McCormick on Evidence* § 185, at 737 (Kenneth S. Broun et al. eds., 6th ed. 2006)) (emphasis added). Because Bitterman only complains of unfair prejudice and not any of the other rule 403 considerations, we need only balance the first two parts of the test against the third and need not consider the other three factors. *See id.* at 641–643 (demonstrating that the remaining factors of the test do not concern unfair prejudice or probative value).

The trial court could have reasonably concluded that the tendency for the evidence in question to cause a decision on an improper basis did not outweigh the combined strength of its inherent probative force and of the State's need to introduce the evidence. The probative force of the proffered item was strong. The evidence the State presented—magazines containing pictures of naked underage boys obtained from Bitterman's home—related directly to an essential element of the alleged extraneous offence. The fact that the magazines were found in Bitterman's home tended to increase the probability that Bitterman had in fact committed the offense of possession of child pornography, and as previously mentioned, the commission of the offense is a matter of consequence at sentencing. The State's need to admit the evidence in question was not particularly strong. While

7

introducing the actual child pornography strengthened the State's assertion that Bitterman possessed child pornography, the State also had the undisputed testimony of the officer who executed the warrant. Because the pictures were to be used in addition to undisputed testimony relevant to the same fact of consequence, the State's need to introduce the pictures was reduced.

There is no question that the evidence of which Bitterman complains could inflame the jury, as the general public would consider the evidence—nude pictures of children—to be extremely reprehensible.[1] The general public, however, also considers reprehensible the act that the State was trying to prove—the possession of child pornography. In reality any evidence, physical or testimonial, presented to prove this extraneous crime would be prejudicial to Bitterman because "[a]ll testimony and physical evidence will likely be prejudicial to one party or the other." *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). Our task is to instead look for *unfair* prejudice. *See Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). Emotion that results from understanding the true extent of the fact of consequence is simply emotion resulting from the logical, probative force of the evidence; what we need to examine is the opposite, that is, emotion that has no regard for the logical, probative force of the evidence. *See Gigliobianco*, 210 S.W.3d at 641.

---

[1] In this case, one could argue that the introduction of the photographs actually worked in Bitterman's favor. The word "pornography" usually conjures an image of persons engaged in sexual acts. If the State had only introduced the testimony of the executing police officer and did not provide the actual photographs, the jury could have assumed that the pictures showed children engaged in sexual acts, which might have the potential to inflame the jury to a much greater extent than pictures that only showed children in the nude.

While the potential prejudice that the admitted pictures could cause is high, the potential *unfair* prejudice of admitting pictures is marginal at best because the pictures merely show the commission of the extraneous offense. The trial court was thus well within the zone of reasonable disagreement when it decided that the unfair prejudice did not substantially outweigh the probative value. We hold then that the admission of the photographs was not an abuse of discretion and overrule Bitterman's point of error.

**Parole Conditions**

We now address Bitterman's arguments regarding the trial court's imposition of parole conditions. The trial court ordered Bitterman, as a condition of Bitterman's parole, to pay all court costs, the fees of his court-appointed attorney, his fine, and restitution to the victim. The State agrees with the basic premise of Bitterman's point of error: that the trial court had no power to order these parole conditions. We also agree that the executive branch alone has the authority to place conditions on parole and that, as a general rule, a court cannot order a parole condition. *See* Tex. Gov't Code Ann. § 508.221 (West 2004); *Bray v. State*, 179 S.W.3d 725, 729 (Tex. App.—Fort Worth 2005, no pet.); *McNeill v. State*, 991 S.W.2d 300, 302 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd, untimely filed).

A trial court, however, can recommend parole conditions for the Board to consider. *See McNeill*, 991 S.W.2d at 302. The State would have us change the order to a recommended parole condition of payment of court costs, court-appointed attorney fees, and the assessed fine. Bitterman instead argues that the order must be struck on two grounds.

9

First, Bitterman argues that orders erroneously imposing parole conditions must be struck and relies on *Jones v. State*, No. 07-06-0155-CR, 2006 Tex. App. LEXIS 8121, at \*4 (Tex. App.—Amarillo Sept. 13, 2006, no pet.) (mem. op., not designated for publication) (citing *Garcia v. State*, 773 S.W.2d 694, 697 (Tex. App.—Corpus Christi 1989, no pet.)), as authority for deleting the order entirely. Neither the *Jones* court nor the *Garcia* court, however, offered any reason why they deleted the orders instead of reforming them to recommendations. It has been the consistant practice of this Court when presented with orders erroneously imposing parole conditions to follow the *McNeill* decision and reform them to read as recommended parole conditions. *See, e.g.*, *Davis v. State*, No. 03-06-00370-CR, 2006 Tex. App. LEXIS 10328, at \*2 (Tex. App.—Austin Dec. 1, 2006, no pet.) (mem. op., not designated for publication); *Terrell v. State*, No. 03-06-00250-CR, 2006 Tex. App. LEXIS 9780, at \*13–14 (Tex. App.—Austin Nov. 10, 2006, no pet.) (mem. op., not designated for publication); *Rushin v. State*, No. 03-06-00068-CR, 2006 Tex. App. LEXIS 6693, at \*10 (Tex. App.—Austin July 28, 2006, pet. ref'd) (mem. op., not designated for publication). As the *McNeill* decision came after the *Garcia* decision and is now the practice of this Court, Bitterman would need to present a convincing reason for us to deviate from the *McNeill* decision. Bitterman, however, has failed to provide us with any reason, convincing or otherwise, why we should ignore settled practice in favor of a procedure that he finds personally beneficial.

Bitterman's second ground for striking the order is that the Board of Pardons and Paroles would not have the power in this case to make the payment of court-appointed attorney fees and court costs a condition of parole. The Board of Pardons and Paroles has the power to impose, as a condition of parole, any condition that a court could impose on a defendant placed on

community supervision. Tex. Gov't Code Ann. § 508.221. The conditions that a court can impose on a defendant under community supervision are quite broad; the court can impose "any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (West 2006). Ordering the payment of court-appointed attorney fees, court costs, and the assessed fine is included. *Id.* § 11(a)(8), (11). Bitterman argues that if this were a matter of court-ordered community supervision, the trial court would not have been able to order the payment of court-appointed attorney fees and court costs unless the court first determined that the defendant had the ability to pay the fees. In support of this assertion, Bitterman cites the following statute:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

*Id.* art. 26.05(g) (West Supp. 2006). Because the trial court could not have ordered the payment of those fees, Bitterman argues, the Board of Pardons and Paroles cannot either. According to Bitterman, it would be improper for the trial court to recommend to the Board a parole condition that it could not impose and the order must instead be struck.

We need not decide whether the cited statute prohibits the Board of Pardons and Paroles from imposing parole conditions regarding payment without a finding by the trial court to determine ability to pay. Assuming without deciding that the Board is prohibited from making such an order, it does not follow that it would be improper for the trial court to issue a recommendation

11

on parole conditions regarding payment. A trial court's recommendation is not an order; such a recommendation imposes no obligation on anyone to observe it. Bitterman has not cited, and we have not located, any authority that would prohibit a court from making a recommendation about parole conditions in this situation. Officers and agencies of the State are presumed to act legally unless the contrary is shown. *See Ex parte Lefors*, 303 S.W.2d 394, 398 (Tex. Crim. App. 1957); *Citizens of Tex. Sav. & Loan Ass'n v. Lewis*, 483 S.W.2d 359, 366 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.). We must therefore presume that the Board of Pardons and Paroles will investigate its legal ability to follow a particular court's recommendation before doing so, rather than simply rubber-stamping the trial court's recommendation.

Because both the State and Bitterman agree that the reformed judgment should omit payment of restitution as a recommended condition of parole because the trial court determined that no restitution was owed, we will modify the judgment to that extent and will modify the rest of the ordered parole conditions to reflect that they are recommendations. Accordingly, we partially sustain Bitterman's issue.

**CONCLUSION**

Having sustained in part Bitterman's point of error regarding the parole conditions and having overruled the point of error regarding the admission of evidence at sentencing, we modify the judgment of conviction by striking out the entire last paragraph, which reads, "PAROLE CONDITION: DEFENDANT ORDERED BY COURT TO PAY COURT COSTS, ATTORNEY FEES, FINES, AND RESTITUTION AS A CONDITION OF PAROLE," and inserting the

12

following in its place:  "The court recommends that as a condition of parole the defendant pay court costs, attorney fees, and fines."

As modified, we affirm the judgment of the trial court.


_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Modified and, as Modified, Affirmed

Filed:   August 28, 2007

Do Not Publish